UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>          v.<br><br>Jeanne Tinker-Smith,<br><br>                Defendant. | Case No. CR16-32RSL<br><br>ORDER GRANTING<br>CORAM NOBIS PETITION<br>TO VACATE CONVICTION |

This matter comes before the Court on Jeanne Tinker-Smith's "Coram Nobis Petition Requesting to Vacate 922(g) Conviction." Dkt. # 83. Having reviewed the petition, the Government's response (Dkt. # 85), Jeanne Tinker-Smith's reply (Dkt. # 86), and the record herein, the Court GRANTS Jeanne Tinker-Smith's petition.

## I.    Background

In 2016, Jeanne Tinker-Smith was convicted of aiding and abetting a felon in possession of a firearm. Dkt. # 58. Eight years later, Whatcom County Superior Court determined that Jeanne Tinker-Smith's late son, the felon she had been convicted of aiding and abetting, was entitled to have his felony conviction vacated and could henceforth be considered "never convicted of the offense." Dkt. # 83 at 2, Ex. 2. The question here is whether the vacation of her

ORDER GRANTING CORAM
NOBIS PETITION - 1

1  son's conviction should lead to the vacation of Jeanne Tinker-Smith's conviction through the

2  extraordinary remedy of a writ of error *coram nobis*.

3

4  On September 21, 2006, Tinker-Smith's son, Cecil Tinker-Smith, pleaded guilty in

5  Whatcom County Superior Court to possession of marijuana in violation of Washington's

6  Uniform Controlled Substances Act, RCW 69.50.4013. Dkt. # 83, Ex. 1 at 1. Cecil Tinker-Smith

7  had no prior criminal history and his sentencing range was determined to be 0–6 months. *Id*. at

8

9  2. He was sentenced to 30 days confinement in the county jail. *Id*. at 5.

10  On November 16, 2014, law enforcement was notified that Cecil Tinker-Smith was

11  shooting recklessly on Jeanne Tinker-Smith's property. PSIR ¶ 5. When officers arrived, Cecil

12

13  Tinker-Smith barricaded himself inside Jeanne Tinker-Smith's home. *Id*. When officers

14  attempted to defuse the situation, Jeanne Tinker-Smith told officers that Cecil Tinker-Smith was

15

16  not at home and had not been shooting firearms on the property. PSIR ¶ 8. She denied there

17  were any firearms on the property, refused to help the officers, called the officers "Nazis" and

18

19  "fascists," and told them they deserved to be shot. *Id*. Cecil Tinker-Smith later fired at the

20  officers and they fired back, killing him. *Id*. During the incident, an officer was struck in the

21  cheek by a shotgun pellet. *Id*. Afterward, a shotgun, two rifles, and two pistols were recovered

22

23  from inside Jeanne Tinker-Smith's home. PSIR ¶ 6.

24  An investigation determined that Jeanne Tinker-Smith had purchased all the guns, that

25  they were commonly used by Cecil Tinker-Smith, and that Jeanne Tinker-Smith sometimes

26  went shooting with Cecil Tinker-Smith even though she knew he could not possess firearms

27

28  because of his felony conviction. *Id*. On February 10, 2015, Jeanne Tinker-Smith was charged

ORDER GRANTING CORAM
NOBIS PETITION - 2

with aiding and abetting a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), 924(a)(2), and 2. Dkt. # 1. In 2016, after a four-day jury trial, Jeanne Tinker-Smith was found guilty and sentenced by this Court to two years probation. Dkts. # 58, 67.

In 2021, the Washington State Supreme Court held in *State v. Blake* that convictions entered under RCW 69.50.4013 were unconstitutional because that statute's strict liability for felony drug possession violated the due process clauses of the federal and state constitutions. 197 Wn.2d 170 (2021). Three years later, on August 22, 2024, Whatcom County Superior Court vacated and dismissed Cecil Tinker-Smith's 2006 conviction under RCW 69.50.4013, citing *Blake*. Dkt. # 83, Ex. 2. The Whatcom County Superior Court order stated: "As a result of the vacation of the conviction(s) herein, the Defendant may state they were never convicted of the offense(s) under this cause number, including for employment as well as housing purposes." *Id*.

## II.    Discussion

Because her son's 2006 felony conviction has recently been vacated, Jeanne Tinker-Smith, now 73 years old, asks this Court to vacate her 2016 conviction for aiding and abetting a felon in possession of a firearm. Dkt. # 83. She argues that the vacation of her son's felony conviction means she is actually innocent of the crime of aiding and abetting a felon. *Id*. She further argues that a petition for a writ of *coram nobis* is the proper remedy for her situation, given that she was sentenced by this Court nearly eight years ago and finished her term of probation more than six years ago. Dkts. # 67, 78.

District courts have the power to issue the writ of *coram nobis* under the All Writs Act. *United States v. Morgan*, 346 U.S. 502, 506–07 (1954). "[T]he writ of error coram nobis is a

ORDER GRANTING CORAM
NOBIS PETITION - 3

highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007). To qualify for *coram nobis* relief, Jeanne Tinker-Smith must show that: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987). Failure to meet any one of these elements would be fatal to Jeanne Tinker-Smith's request for relief. *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002).

The Court agrees with both parties that the first and third requirements for *coram nobis* relief have been met in this case. Dkts. # 83 at 4, 85 at 5. The first requirement, unavailability of a more usual remedy, is met here because Jeanne Tinker-Smith has finished serving her sentence and therefore cannot pursue the more usual remedy of a petition under 28 U.S.C. § 2255. *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005), abrogated in part on other grounds by *Padilla v. Kentucky*, 559 U.S. 356 (2010). The third requirement, adverse consequences sufficient to meet Article III's case or controversy requirement, is met here because Jeanne Tinker-Smith lost her right to bear arms as a result of her felony conviction. *See* 18 U.S.C. § 922(g)(1); *United States v. Zalapa*, 509 F.3d 1060, 1064–65 (9th Cir. 2007). The parties disagree on the remaining requirements, which the Court now examines in more detail.

ORDER GRANTING CORAM
NOBIS PETITION - 4

**A. Jeanne Tinker-Smith's Delay In Attacking Her Conviction Is Reasonable.**

Requirement two states that a party seeking *coram nobis* relief must demonstrate that "valid reasons exist for not attacking the conviction earlier." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987). However, there is no "specific limitations period" for a *coram nobis* petition and the Ninth Circuit has not "expressly defined" what constitutes "valid or sound" reasons for delay in attacking one's conviction. *United States v. Kroytor*, 977 F.3d 957, 961 (9th Cir. 2020) (citing *Kwan*, 407 F.3d 1005 at 1012, 1013 (9th Cir. 2005)). Instead, the Ninth Circuit, drawing on a review of *coram nobis* cases, has described a spectrum of reasons for delay that run from not valid to valid. *Kwan*, 407 F.3d 1005, 1013–1014 (9th Cir. 2005). To determine where on the spectrum a particular case sits, the Ninth Circuit has applied analogic reasoning. *Riedl*, 496 F.3d 1003 at 1007 (9th Cir. 2007). It has also made clear that the duration of the delay alone is not determinative; the justification for the delay must be reasonable, too. *United States v. Kroytor*, 977 F.3d 957, 961 (9th Cir. 2020). The facts related to Jeanne Tinker-Smith's case and her delay in seeking *coram nobis* relief make her petition most analogous to petitions that have been approved by the Ninth Circuit.

**1. The Spectrum of Reasons for Delay, From Not Valid to Valid.**

Reasons for delay that the Ninth Circuit has deemed not valid include: delay for "no reason whatsoever," delay that causes demonstrable prejudice to the respondent, and delay "where the petitioner appears to be abusing the writ." *Kwan*, 407 F.3d 1005 at 1013 (9th Cir. 2005). In the valid category: a potpourri of cases that offer varying levels of analysis as to why the reasons for delay were acceptable. *Id*. at 1014. In 1999, the Ninth Circuit found *coram nobis*

relief was appropriate for a shipping concern that had waited four years to file a *coram nobis* petition in an antitrust matter even though the shipping concern "could have, but did not, raise the same claim at the time of conviction." *Id*. (citing *United States v. Tucor Int'l, Inc.*, 189 F.3d 834, 836-38 (9th Cir. 1999)). The opinion in *Tucor* does not examine the second *Hirabayashi* factor, so the court's rationale as to the timeliness of the shipping concern's *coram nobis* petition is unclear. *Tucor*, 189 F.3d 834 (9th Cir. 1999). In 1975, prior to *Hirabayashi*, the Ninth Circuit found *coram nobis* relief appropriate for a man who had waited ten years after the expiration of his sentence to bring his *coram nobis* petition. *Kwan*, 407 F.3d 1005 at 1014 (citing *Rewak v. United States*, 512 F.2d 1184, 1185 (9th Cir. 1975)). The man's petition argued that a failure to sentence him under the Youth Corrections Act had saddled him with an adult criminal record that was "causing him difficulty in obtaining employment as a security guard and a nurse because his conviction bars him from obtaining a firearm permit for work as a guard or licensing as a nurse." *Rewak*, 512 F.2d 1184 at 1185 (9th Cir. 1975). In 1987, in *Hirabayashi*, the Ninth Circuit found *coram nobis* relief appropriate after a forty-year delay, given the then-recent discovery of archival evidence that supported vacating the 1942 conviction of Gordon Hirabayashi, an American citizen who violated a wartime curfew for persons of Japanese ancestry because he believed the curfew to be unconstitutional. *Kwan*, 407 F.3d 1005 at 1014 (citing *Hirabayashi*, 828 F.2d 591, 605 (9th Cir. 1987)). In 2007, the Ninth Circuit rejected a *coram nobis* petition because the petitioner could have made the same void-for-vagueness challenge to the relevant law during her trial. *United States v. Riedl*, 496 F.3d 1003, 1006–1007 (9th Cir. 2007). However, the *Reidl* court also noted, by way of contrast, that "we have

considered delay to be reasonable when the applicable law was recently changed and made

retroactive." *Id*. (Citing *United States v. Walgren*, 885 F.2d at 1421 (9th Cir. 1989)).[1]

### 2. Jeanne Tinker-Smith's Case Is Most Analogous to *Walgren*.

Applying analogic reasoning to the facts and delay involved in Jeanne Tinker-Smith's

*coram nobis* petition, the Court finds that her situation is most analogous to *Walgren*. There, the

Ninth Circuit deemed a delay of eight years reasonable given that six years after petitioner's

failed appeal of his conviction, applicable law changed due to a decision of the U.S. Supreme

Court and then, two years after that, the Ninth Circuit gave retroactive effect to the U.S.

Supreme Court's decision. *Walgren*, 885 F.2d at 1419–1421 (9th Cir. 1989) (citing *McNally v.*

*United States*, 483 U.S. 350 (1987) and *United States v. Mitchell*, 867 F.2d 1232, 1233 (9th Cir.

1989)). Similarly, here Jeanne Tinker-Smith's petition arises because the Washington State

Supreme Court's *Blake* decision in 2021 changed the state's law on felony possession by

declaring RCW 69.50.4013 unconstitutional. Dkt. # 83; *Blake*, 197 Wn.2d 170 (2021). As a

result, on August 22, 2024, Whatcom County Superior Court applied the *Blake* decision

retroactively to erase the 2006 conviction of Jeanne Tinker-Smith's son that was the predicate

for Jeanne Tinker-Smith's 2016 conviction for aiding-and-abetting. Dkt. # 83. As in *Walgren*,

this sequence of events is a valid reason for not attacking a conviction earlier. *Walgren*, 885

F.2d at 1421 (9th Cir. 1989).

---

[1] The Government notes that in *United States v. Kroytor*, the Ninth Circuit found a two-year delay was unjustified where the delay was based only on uncertainty about the retroactivity of a new ruling affecting the viability of petitioner's challenge. 977 F.3d 957, 961 (9th Cir. 2020). Uncertainty about retroactivity does not appear to be an issue in this case, so that aspect of *Kroytor* is irrelevant.

1

**3.  Jeanne Tinker-Smith's Delay Was Reasonable Under *Hirabayashi*.**

2

3       The Government contends Jeanne Tinker-Smith's delay in attacking her conviction is

4  unreasonable and argues that her delay began the moment *Blake* was decided in February 2021.

5  Dkt. # 85 at 5–6. Counsel for Jeanne Tinker-Smith contends her delay was reasonable and that it

6  began the moment Whatcom County Superior Court vacated her son's conviction in August

7  2024. Dkt. # 86 at 2. The Court notes that whether Jeanne Tinker-Smith's delay was more than

8

9  three years (as the Government calculates) or just two months (as counsel for Jeanne Tinker-

10  Smith calculates), it is considerably less than the ten-year delay in *Rewak*, where, as here,

11  petitioner was barred by his conviction from obtaining firearms. *Rewak*, 512 F.2d 1184 at 1185

12

13  (9th Cir. 1975).[2] In any event, the delay's duration is fundamentally entwined with the question

14  of whether the delay, however calculated, was reasonable. *See United States v. Kroytor*, 977

15  F.3d 957, 961 (9th Cir. 2020) (stating that "where petitioners reasonably could have asserted the

16

17  basis for their coram nobis petition earlier, they have no valid justification for delaying pursuit

18  of that claim.").

19

20

21

22       [2] A comparison to *Walgren* on this particular point breaks down. In *Walgren*, the time from

23  failed appeal to successful *coram nobis* petition based on an intervening U.S. Supreme Court decision

24  was eight years. *Walgren*, 885 F.2d at 1419, 1428 (9th Cir. 1989). However, the Government here is

25  starting the clock at the time when the intervening Washington State Supreme Court decision, *Blake*,

26  was issued. Thus, the more relevant comparison to *Walgren* would be the time from issuance of the

27  intervening U.S. Supreme Court decision, *McNally*, to Walgren's filing of his *coram nobis* petition.

28  However, the sequence of events in *Walgren* confounds efforts to calculate that time period in a way that

has any comparative value, given that Walgren apparently filed his *coram nobis* petition three years

*before* the *McNally* decision was issued and then, presumably, updated his petition in the wake of

*McNally*. *Walgren*, 885 F.2d at 1420 (9th Cir. 1989).

ORDER GRANTING CORAM
NOBIS PETITION - 8

On the question of reasonableness, the Government, citing *Kroytor*, correctly points out that Jeanne Tinker-Smith has not offered any specific reasons for why she failed to immediately pursue vacatur after *Blake* was decided in 2021. Dkt. # 85 at 6. But in *Kroytor*, the Ninth Circuit also cited *Hirabayashi* for the rule that where "petitioners did not have a reasonable chance to pursue their claim earlier due to the specific circumstances they faced, delay during the time when such circumstances existed may be justified." *Kroytor*, 977 F.3d 957 at 961 (9th Cir. 2020) (citing *Hirabayashi*, 828 F.2d 591, 605 (9th Cir. 1987)). Before discussing how this aspect of *Hirabayashi* helps Jeanne Tinker-Smith's reasonableness case, the Court is compelled to note something else: the vast difference in both the factual and moral records produced by Gordon Hirabayashi and Jeanne Tinker-Smith.

In 1987, when the Ninth Circuit granted *coram nobis* relief to Gordon Hirabayashi after a forty-year delay, it recounted the history connected to both the Supreme Court's 1943 *Hirabayashi* decision, which upheld the wartime curfew for persons of Japanese ancestry, and the Supreme Court's 1944 *Korematsu* decision, which upheld the forced wartime relocation of persons of Japanese ancestry to what the Supreme Court would later call "concentration camps." *See Hirabayashi v. U.S.*, 320 U.S. 81 (1943); *Korematsu v. U.S.*, 323 U.S. 214 (1944); and *Trump v. Hawaii*, 585 U.S. 667, 710 (2018) (describing the Court's 1944 *Korematsu* decision as "gravely wrong" in its upholding of the "morally repugnant" relocation order, and stating: "The forcible relocation of U.S. citizens to concentration camps, solely and explicitly on the basis of race, is objectively unlawful and outside the scope of Presidential authority."). When, in 1987, the Ninth Circuit recounted the Supreme Court's *Hirabayashi* and *Korematsu* decisions as it

1    granted *coram nobis* relief to Gordon Hirabayashi after a forty-year delay, the court noted that
2
3    those Supreme Court decisions "have never occupied an honored place in our history" and stated
4    that the convictions underlying those decisions have been judged by history to be "unjust."
5    *Hirabayashi*, 828 F.2d 591, 593 (9th Cir. 1987).
6
7        In stark contrast, Jeanne Tinker-Smith was convicted by a jury of her peers for aiding and
8    abetting a felon in possession of a firearm, on a record that showed she had purchased multiple
9    guns used by her son at a time when she knew he was barred by his felony conviction from
10    having the guns. Dkts. # 58, 60; PSIR ¶ 6. The record also showed that Jeanne Tinker-Smith
11    frustrated the efforts of law enforcement to peacefully resolve the situation created at her house
12
13    by her son's reckless shooting *and* that Jeanne Tinker-Smith contributed to the combustible
14    atmosphere that led to her son's death by calling the responding officers "Nazis" and "fascists"
15
16    who deserved to be shot (after which her son opened fire at officers, one officer was shot in the
17    cheek, and her son was killed by officers returning fire). PSIR ¶¶ 5–8, Dkt. # 65. Therefore, the
18    fact that the Ninth Circuit's *Hirabayashi* decision granting *coram nobis* relief after a forty-year
19
20    delay now proves helpful to Jeanne Tinker-Smith in her present *coram nobis* effort is, in this
21    Court's view, a credit to Gordon Hirabayashi's legal and moral clarity in 1942 and not any sort
22
23    of endorsement of the poor decisions and harmful actions taken by Jeanne Tinker-Smith in the
24    underlying matter here.
25        That said, the Court finds *Hirabayashi* helpful on the specific question of whether Jeanne
26
27    Tinker-Smith's delay in seeking *coram nobis* relief was reasonable. In *Hirabayashi*, the Ninth
28    Circuit indicated that expectations of a "lay person" should be grounded in reality when it comes

ORDER GRANTING CORAM
NOBIS PETITION - 10

to that person's ability to swiftly discover new facts that might support a *coram nobis* petition.

*Hirabayashi*, 828 F.2d 591 at 605 (9th Cir. 1987). Thus, the Ninth Circuit rejected criticism of

Hirabayashi's diligence in uncovering a relevant record that professional historians themselves

had failed to uncover for forty years, and that was first noticed in 1982 by a researcher for the

Commission on Wartime Relocation and Interment of Civilians. *Id.* at 594. Undoubtedly, notice

of the 2021 *Blake* decision was far more widespread than notice of the archival record at issue in

*Hirabayashi*. However, as in *Hirabayashi*, here it would be asking too much of a "lay person" to

demand that Jeanne Tinker-Smith, who recently demonstrated her unfamiliarity with the legal

process[3] and remains "forever shattered by her only child's death," should have (1) heard of

*Blake* immediately, (2) quickly digested its relevance to her dead son, and (3) swiftly understood

that by applying *Blake* retroactively to her son to achieve vacatur of his old felony conviction,

she might then be able to successfully deploy the highly unusual writ of error *coram nobis* to

vacate her own aiding-and-abetting conviction. Dkt. # 86 at 1.

Furthermore, this Court has found "real life circumstances" to be sufficient justification

for a sixteen-month delay in filing a *coram nobis* petition. *United States v. Schwabland*, No.

CR14-223RSL, 2021 WL 2662327, at *3 (W.D. Wash. June 29, 2021). Although Jeanne Tinker-

Smith's petition has not detailed "real life circumstances" to the degree they were detailed in

*Schwabland*, this Court finds that her "real life circumstances" are evident from the record and

---

[3] *See* Dkts. # 80, 81, 82, and 83 at 1 (chronicling Jeanne Tinker-Smith's initial, and ultimately stricken attempt to attack her conviction through a filing by a person who represented themselves as having "power of attorney" for Jeanne Tinker-Smith).

ORDER GRANTING CORAM
NOBIS PETITION - 11

justify a presumption that Jeanne Tinker-Smith could not reasonably have been expected to file a *coram nobis* petition before August 22, 2024, when her son's felony conviction was vacated as a result of *Blake*. Therefore, the Court calculates Jeanne Tinker-Smith's delay in filing her petition at only two months, a delay that is quite reasonable in these circumstances. *See Gray v. United States*, No. CR09-0170-JCC, 2023 WL 8528652 (W.D. Wash. Dec. 8, 2023) (stating, in similar circumstances: "The Court is doubtful that a filing within the year constitutes a delay at all, let alone undue delay—nor does the Government argue that it is.").

**B.  Jeanne Tinker-Smith's Conviction Involves an Error of the Most Fundamental Character.**

The writ of error *coram nobis* "allows a court to vacate its judgments 'for errors of fact . . . in those cases where the errors [are] of the most fundamental character, that is, such as rendered the proceeding itself invalid." *Hirabayashi*, 828 F.2d 591, 604 (9th Cir. 1987) (citing *United States v. Mayer*, 235 U.S. 55, 69 (1914)). Therefore, to meet *Hirabayashi* requirement four petitioner must show "the error is of the most fundamental character." *Id.* The Ninth Circuit has held that an error is fundamental where a conviction rests upon conduct "that was not a crime." *Walgren*, 885 F.2d 1417 at 1424 (9th Cir. 1989).

In the Government's view, no error has occurred in this case. Dkt. # 85 at 7. To support that claim, the Government points to *Lewis v. United States*, in which Lewis, charged with being a felon in possession of a firearm, claimed before trial that his predicate felony conviction had been obtained unconstitutionally. 445 U.S. 55, 56–58 (1980). The Court held in *Lewis* that federal law may prohibit a felon from possessing a firearm, "despite the fact that the predicate

ORDER GRANTING CORAM
NOBIS PETITION - 12

felony may be subject to collateral attack on constitutional grounds." *Id*. at 65. Put another way,

"it is the fact of a felony conviction, with no intervening vacatur or other affirmative official

action by the state to nullify the conviction, that triggers the firearms disability." *United States v.*

*Marks*, 379 F.3d 1114, 1116–1119 (9th Cir. 2004) (holding that Marks, a Washington State

resident who believed his predicate state conviction had been obtained in violation of the

Washington State Constitution, could nevertheless be prosecuted as a felon in possession of a

firearm under federal law because his predicate state conviction had not yet been "expunged,

vacated, or set aside"). Based on these precedents, the Government argues that it makes no

difference that Cecil Tinker-Smith's conviction has now been vacated, because at the time

Jeanne Tinker-Smith was convicted "her son's possession of a firearm was illegal." Dkt. 85 at 8.

The problem with the Government's argument on this point is that the issue now before this

Court arrives in a very different posture than the issues in *Lewis* and *Marks*.

In *Lewis* and *Marks*, criminal defendants facing prosecution sought to attack predicate

felony convictions they believed to have been obtained unconstitutionally. Those convictions

had not yet been expunged, vacated, or set aside. Here, in contrast, more than eight years ago

Jeanne Tinker-Smith was tried and convicted of aiding and abetting a felon in possession of a

firearm. She completed her sentence more than six years ago. A few months ago, the predicate

felony conviction for Jeanne Tinker-Smith's aiding-and-abetting conviction was vacated by the

Whatcom County Superior Court with instructions that the predicate conviction could be treated

as if it never occurred. Dkt. # 83, Ex. 2. This creates a situation that was not before the *Lewis* or

*Marks* courts.

ORDER GRANTING CORAM
NOBIS PETITION - 13

Given that here, the predicate conviction to Jeanne Tinker-Smith's aiding-and-abetting conviction has already been vacated, with that vacation supported by a legal determination that the predicate conviction was based on unconstitutional error, this Court finds it has been presented with the very situation a writ of error *coram nobis* is meant to address. As the Court noted in *Morgan*, the writ has long been used to "correct an error 'of fact not apparent on the face of the record.'" *Morgan*, 346 U.S. 502 at 508 (1954) (citing *Davis v. Packard*, 33 U.S. 312, 313 (1834)). This was true in the case of *Davis v. Packard*, where the trial court had apparently not realized that Davis "was consul-general of the King of Saxony and therefore exempt from suit . . . ." *Id*. Here, neither this Court nor any court in Washington State realized, when Jeanne Tinker-Smith was being tried and convicted in 2016, that her trial and conviction rested upon a predicate felony "that was not a crime" because the statute describing that predicate felony, RCW 69.50.4013, was unconstitutional. Dkt. # 83, Ex. 2; *Walgren*, 885 F.2d 1417 at 1424 (9th Cir. 1989); *Blake*, 197 Wn.2d 170 (2021). Now that the Court knows this fact, which was not previously apparent on the face of the record, an error of fundamental character has been revealed and the fourth *Hirabayashi* requirement has been met. *Id*.[4]

However, a point the Court made earlier bears repeating. The fact that Jeanne Tinker-Smith has met all four of the *Hirabayashi* requirements for *coram nobis* relief does not place her on the same moral plane as Gordon Hirabayashi. Jeanne Tinker-Smith's behavior in the

---

[4] Because the Court finds it proper to grant Jeanne Tinker-Smith's *coram nobis* petition under her *Blake* argument, it does not address her arguments under *United States v. Valencia-Mendoza*, 912 F.3d 1215 (9th Cir. 2019) and *United States v. McAdory*, 935 F.3d 838 (9th Cir. 2019). Dkt. # 83 at 2.

ORDER GRANTING CORAM
NOBIS PETITION - 14

underlying matter was shocking and inappropriate, and in the Court's view she bears

responsibility for both the death of her son and the wounding of a police officer in the line of

duty. The Court knows, however, that Jeanne Tinker-Smith has paid an overwhelming price for

what transpired that day and believes that under these unique circumstances it is appropriate to

grant this petition.

**III.    Conclusion**

Based on the foregoing analysis, the Court GRANTS Jeanne Tinker-Smith's *coram nobis*

petition (Dkt. # 83). The conviction for one count of felon in possession of a firearm, in

violation of 18 U.S.C. § 922(g)(1), 924(a)(2), and 2 is hereby VACATED.


It is so ORDERED.


DATED this 3rd day of February, 2025.


*Mht S Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING CORAM
NOBIS PETITION - 15